Our next case on the call of the docket is agenda number 12, case number 113054, Jesse Hernandez et al. Appellees versus Isidore Bernstein et al. Appellants. Counsel for the appellants, please proceed. Thank you, Your Honor. Good morning. Good morning. May it please the court, counsel. I'm Tim Shelton for the defendants appellants John Grazian and Richard Volpe. With me is co-defense counsel Karen Kesey-Grand for defendants appellants Jeffrey Pritikin, special representative of the state of Isidore Bernstein, and for Bernstein and Grazian PC. We're arguing jointly and have agreed that I will take 15 minutes to address the appellate court's final order analysis, which is the main issue in the case, namely whether the involuntary dismissal entered by the trial court was a final adjudication on the merits for purposes of res judicata and the rule against claim splitting. And we'd like to reserve a few minutes for Ms. DeGran to present additional argument if necessary on the main issue and address if need be the secondary issue of express reservation exception to the prohibition against claim splitting. Your Honor, in this case plaintiffs originally brought a single theory of liability, a single claim of legal negligence against the defendants, namely that they had failed to pursue a product's liability claim arising out of their representation of the plaintiffs in a worker's compensation matter. This claim was the only claim brought. It was involuntarily dismissed by the trial court pursuant to 2619 as having been statutorily barred. It was removed from the table. Then plaintiffs were given permission to plead additional allegations and they pled a different claim of liability, legal negligence, but a different claim based on a different aggregate set of operative facts, namely that the defendants had failed to advise them about a possible legal malpractice action against previous attorneys, Spector and Lenz, who had represented them much earlier. They then voluntarily dismissed this claim, the entire case. They kept repleting both claims, but they dismissed the entire case and this occurred on the eve of a trial. Basically, summary judgment motion had been briefed and was about to be decided, was to be decided the very day they voluntarily dismissed. Then when they went to refile, the trial court decided that their new action was barred. They refiled the same claims, decided that they were barred by the doctrine of res judicata. Pellicourt disagreed. And disagreed largely on the single theory of recovery analysis. And we are here to submit that the single theory of recovery analysis does not fit the situation we have here, the circumstances where there was actually a separate, distinct claim decided on the merits, adjudicated on the merits, statutorily barred, disappeared forever. The appellate court acknowledged that and said that this claim was not, that the trial court had declined to revisit it. There was going to be no more attention paid to that. Then they were allowed to replete. Now that's different from the single theory of recovery cases, Piagentini and all of the Hull and other cases, Rice and so on, in which there were allegations on the table at the beginning were made, certain claims. In each case we have the overarching cause of action, single cause of action. We have to for that prong of res judicata. Within that there are claims. And in the single theory of recovery cases, those claims are all present there. And the plaintiff is given permission to reallege those claims, to make different allegations within those claims to try to establish a right or a liability that can be enforced by the court. In our case, there was only one claim. It was taken out of the picture. Then there were new claims, a new claim pleaded. And at that point, the plaintiffs began to engage, or at that point when they did not pursue that claim to resolution, did not litigate it to resolution, but rather voluntarily dismissed it, they engaged in claim splitting because at that point they began a brand new round of litigation. We'd have one round on the first claim. Then they dismissed this new claim. And then when they went to refile, they're saying, well, let's go to litigate on that claim. That is, we submit a violation of the provision against claim splitting. What's wrong with the plaintiff's argument that there's really one claim that the law firms involved needed to inform the plaintiffs of all their potential claims and causes of action they possessed, or which might arise from the injury in question, right? You had the chemical exposure and the products liability claims. Apparently, the statute had run on those claims prior to the second law firm being involved. The claim then goes to the second law firm, same claim, saying, well, then you missed the legal malpractice case against the first law firm. You didn't advise us of this. Oops, statute ran. Well, you didn't advise us that we may have had a legal malpractice claim. Why isn't it one claim and then therefore not under Hudson? Comes to the question of definition of claim, which I know you've discussed recently, especially Judge Tice was on this before. But to the degree that a claim is an aggregate set of operative facts, this is black, giving rise to a right enforceable, it seems to me you have to look at the aggregate set of facts giving rise to that claim. And when you talk about the first claim they made, the aggregate set of facts had only to do with the events and conditions that caused the injuries to Jesse Hernandez. We're only talking about what happened to him. We had a products liability claim. You didn't pursue it. It wasn't only that you didn't advise about it, it was you didn't bring it. Then we get a different aggregate set of operative facts, which have something to do with failure to, the injury now becomes that they were deprived of the ability to bring a legal malpractice action. It's a different set of facts. Well, let's talk specifically. The August order, and again, what's wrong with this proposition? We're going to hear it in a minute anyway when you sit down. That the August order did not adjudicate the merits of plaintiff's legal negligence claim against defendant, it simply adjudicated the merits of certain allegations pled in support of that claim. A claim that plaintiffs were given specific leave to re-plead in five. The allegations that law firm B, your client, did not indicate to plaintiff that they had claims, whether it be products or chemical exposure, that's dismissed. And now new allegations surface when they're allowed to re-plead of the same claim that, well, then I guess you didn't tell us about the claim we had with respect to legal malpractice against law firm A because they failed to file those claims within the statute. The choice of words is actually re-plead. They did not, they were not permitted to re-plead allegations about the product's liability claim. That claim was not to be revisited. It was finished. They were given leave to plead new claims, a new claim. See if you can come up with allegations that will support a new claim. I know it's a subtle difference. It's where we hang our hat, frankly, that there is, what involves a claim, what's the difference between one claim arising out of facts, we're not talking again about the transactional test and the same operative facts that gave rise to the single cause of action, but to the test for a claim. And if the trial court had said you may try to re-plead that product's liability claim, those allegations you have already, that are on the table, if you can do something with those, re-plead, and make that into a viable claim, that would have been one thing. But it did not. It said, okay, I'm going to allow you to try another avenue. There's another word, avenue, claim. So are you saying that that August order was a final order even though it wasn't with prejudice and it also said with leave to refile, and you're saying that doesn't satisfy the exception in Hudson that the plaintiff expressly reserved the right to maintain the second action? Yes, I am saying that it doesn't. I'm not quite sure that Hudson, well, that gets to the exception that gets to claim splitting about express reservation. What I am saying is that the words, and Kiefer has talked about this in other cases, about you can't look at just the without prejudice or leave to amend language without looking at the whole context of the order, the intent of the court, which has been made clear in this record, very clear. The court intended that that claim be gone. Three different judges looked at it and said it should be gone. And you look at the substance of the claim. And this is a 2619 statutorily barred claim, as was the claim in Hudson and Rhine. The magical incantation of those words is the phrase that's used. I don't think you can get past the fact that we have a finished claim adjudicated. The trial judge knew what he was doing though, right? I mean, the plaintiff said, regardless of the statute having run, what was it, 1997 or whatever it is, agreeing with the defendant's position on the tort claims. My understanding is the plaintiff then said, well, we still have a claim against them for legal malpractice, right? The legal malpractice claim. And the trial judge knew exactly what he was doing because he said, okay, I'm going to dismiss those tort claims without prejudice to replete the claim against the additional allegations rather, is what it appears, against law firm B, indicating that they should have filed a cause of action. Maybe not for products, liability, maybe not for chemical exposure, but certainly for legal malpractice against law firm A. He knew exactly what he was doing didn't he? You can read that part of the transcript, yes, that he knew what he was doing. I'm not sure that that affects the fact that he was eliminating, extinguishing one claim entirely. I know that they both fall under legal malpractice. I know it's both negligence, but the cases don't say that that's not possible. The Cain versus, Lane versus Kalkheim case number three. Legal malpractice allegations counts. When one of them, all arising from the same marital dissolution problem, and when one of them was removed, the others fell. It's just the fact that it was another legal malpractice claim, another negligence claim that the trial court said you can try to do. I don't think that affects the fact that one claim was gone. Yes, it is. The court's order dismissing with leave to replead, was that a final order for purposes of appeal? Dismissing, sorry. The trial court's order here. The first order, the August order. To dismiss, right? With leave to replead, right? Was that final in terms of being able to appeal? I think it was as to that first claim. I really do. Even though they didn't use the words, they did allow to replead. It didn't, the clock didn't start ticking then, for the 30 minutes, 30 days. 30 minutes would be pretty hard. 30 days. It didn't start ticking then because there was allowance to replead. It wasn't until the voluntary dismissal, which turned that previous order, which was final for all. Was it a final order or was it not a final order? It was, that was, this is the trickiest part of it. It was a final order for purposes, but it was preserved by the fact that they replead. I mean, when they did amend their complaint, they pleaded that again. They kept it on hand for appeal. It can't say, it became a final order on voluntary dismissal. Yes, it was not a final order in the sense that the proceedings couldn't go forward and that they had to appeal in 30 days from the entry of that order in August. No, they didn't. They had the 30 days after voluntary dismissal. Your time is, if you have answered Justice Tice's question. I have enough. I'll be back. Okay, thank you. We still have five minutes reserved for Mr. Grand. Yes, perfect. Thank you. The five hasn't started yet. Okay. I'm going to give her a chance to get up here. Good morning, your honors. Thank you. May it please the court, counsel. Again, Karen DeGrand on behalf of the defendant's appellants, the estate of Isadora Bernstein and the Bernstein and Grazian firm. I adopt my co-defendant's counsel's argument concerning the final order analysis and just briefly wish to address an issue that Justice Carmier raised, which is the express reservation exception to the application of the rule against claim splitting. And that is an issue that the appellate court didn't reach. This court may or may not reach that issue should it determine to reverse the final order analysis. The issue is a little bit of a strange or an unusual, I should say, procedural posture because the issue was not raised in the trial court. The trial court granted the motion for the defendants without express reservation ever have been raised as an exception. And then upon filing the opening brief, the plaintiffs emphasized the express reservation argument as a basis for reversal. And we responded and of course the appellate court didn't reach the issue based on its final order analysis. But it was our position then and it's our position now that the plaintiff had forfeited that issue by failing to bring it before the trial court. The matter was first framed in the Quintus case in the first district about the matter of the docket sheet showing the granting the motion to voluntary dismiss with leave to refile. And that Quintus decision was decided several months before the plaintiff had filed the response in the trial court. And so the case and the theory was fully available, but not raised. On the merits, I would just briefly submit to the court that whether the record here could be construed to show the express reservation exception based on that docketing entry, I don't believe that's correct as contemplated by Hudson and by Rhine. The argument that in my judgment at best shows a recognition that there's a statutory right to refile. But according to Hudson, as well as Rhine, that right under the statute does not necessarily does not mean that the defenses that may be brought are obviated by the right to refile. And in Hudson, the court set forth that the right to refile issue pertains to the timing. It doesn't pertain to defenses, and this was also mentioned in Rhine, such as res judicata or any other legitimate defense. It's 13217 really pertains only to the limitations period. And so I think that's an important distinction that has to be made in determining whether a court has made a finding or the record supports a finding that there's been an express reservation of the right to refile by the trial court, a recognition or rather an express reservation of the right to maintain the action as opposed to merely filing the action. And even setting that aside, in this case, one telling distinction between the Quintus and Severino cases that were emphasized by the plaintiff and the situation in this case was that in this case, in refiling the action that we've identified as Hernandez 2, the product liability action, and certainly the notation that there could be a right to refile the case, I don't think by any stretch could contemplate refile the action that originally had been dismissed by Judge Seriano. So if there's no question. Do the plaintiff have a right to argue that because she's the appellee here and we could affirm on any basis? You made kind of a forfeiture argument at the beginning. And we did. That was our position. That continues to be our position. I don't believe that the plaintiff can make that argument as appellee in the Supreme Court, having been the appellant in the appellate court. Thank you, Your Honors. Thank you. Counsel for the appellee. Good morning, Your Honors. My name is Julie Boynton and I represent Jesse and Yolanda Hernandez. There was no claim split in this case. There was only ever one count of professional negligence. We alleged in the original complaint and in the refiled complaint and in the amended complaint that the defendants failed to advise the plaintiffs that they might have claims against parties other than Jesse Hernandez's employers to recover for the injuries which Mr. Hernandez suffered at work. Now Mr. Hernandez had three avenues he could have perceived that helped him live his life, have funds. That was a Social Security disability claim, a work comp claim, and eventually a claim against attorneys who failed to do that. When he went to the first attorneys, the Specter and Lenz, they filed a work comp claim, didn't tell him he had a, or they filed a Social Security claim, didn't tell him he had a work comp claim, didn't tell him he had, well at that time he didn't have a professional, or products claim. Ms. Boynton, what was the workman's comp claim? Because if he didn't learn of his cause of injury, the manganese exposure until 2003, what was the basis he was seeking workman's comp for? He was seeking it because he continued to have illnesses at work and they appeared to be aggravating. He was cutting steel and these fumes and the smoke was aggravating his illness. He didn't know at the time the illness was actually being caused by that. He just knew he had conditions which were being aggravated by that. And so he went, for two years he went to these Social Security disability, and then he switches attorneys and he goes to the Bernstein defendants. The Bernstein defendants immediately recognize there's a work comp potential here. They file the work comp claim, but they don't tell him about the products claim. Case drags on. He goes to a final set of attorneys who recognize there's also the products claim. These attorneys file the products claim and Judge Flanagan rules the products, by then it's 2004, the products claim is barred. He should have known in 1999, four years after he terminated his employment. But that's another question I have is that the plaintiff did learn of his cause of injury until 2003, and his relationship with the defendant law firm ended in 2002. That's correct. He didn't learn. How could the defendant have advised the plaintiff? Well, because the doctors eventually made that connection for the, our client didn't know he's a nonprofessional. It wasn't until 2003 that the doctors finally told him that this is the cause of your injury. He didn't know it until that time. Right, but then. He thought maybe it was naturally, that's what he thought that it was because this type of symptoms, which are Parkinson-like, can occur naturally. The relationship stopped with the law firm in 2002. In 2002. But nevertheless, he had the claim to doctors and had the attorneys advised him to see a doctor who could have made that connection. They could have brought the claim, and in fact that claim was attempted to be brought in 2004. Judge Flanagan rules that the statute of 1999, during the time that the defendants were representing the plaintiffs, and thus they couldn't go forward on it. So they filed a malpractice claim because he no longer could bring the product claim against the defendants, and Judge Soriano comes to a different ruling in August that no, it's not 1999, it's 1995. Well, that means that's when he was with the Specter and Lenz people. They would have had the opportunity. Until Judge Soriano pushed the time forward for the statute of limitations, it was only the defendants. This changed it, but this didn't change the nature of plaintiff's claim. Our claim was that they weren't told about all the available causes of action or claims they might have other than Mr. Hernandez's employer. So we asked to amend. It's not a new claim, it's tried to be portrayed as a new claim, it's the same claim. When they sat in front of the Bernstein people, the Bernstein defendants, they didn't have two claims. It was never two claims. They either had a product, a viable product liability claim, or they had a claim against the prior attorneys who did bring it within the time frame. It's never two claims. It's always been one claim. May I ask your opinion of a definition of claim? Well, I had it here. Just in case. Let me see. Well, it's a claim to me of something, a right of recovery. A claim is a right to recovery. And from our perspective, Judge Suriano's order clearly is not a final order. We're allowed to replete, and according to this court's ruling in Smith v. Central Illinois, an order granting leave to amend indicates the order is not final. And the order clearly didn't terminate the litigation. So the test then becomes did it resolve some aspect of the underlying case, and we said it didn't because our claim was did they fail to advise them about claims that Mr. Hernandez had other than against his employer? That was all they said. Now, there may be additional proofs on that issue, but the claim never changed. And I think our position is supported by both Rice and Piagetti, who realize that just because certain negligent acts or omissions come and go in a negligence claim doesn't mean there's been a resolution of that claim. And clearly Rainn and Hudson are distinguishable because in each of those cases, different causes of action arising from different statutes or common law doctrines were decided. In this case, there was never any resolution of a professional negligence claim about failing to tell about third-party claims. There was only a limitation in terms of if you by Judge Soriano's ruling in this rather than Judge Flanagan's as to which claim it was. With respect to the Rule 273 issue that was raised, we believe that it is not dispositive of this case because under that rule, unless the order of dismissal or statute provides otherwise, an involuntary dismissal operates as adjudication on the merits. Well, clearly Judge Soriano's order provided otherwise because he said you could amend. And Piagetti, again, citing to this court in Smith said, an order granting leave to amend is not final. So it made provisions. In terms of the dismissal based upon the voluntary dismissal, that's a voluntary dismissal, but it's not an involuntary dismissal. So it also, 273 doesn't apply to that dismissal. So it's our position that the appellate court correctly decided this. There's no claim splitting here. Only one issue. Always was one issue. Ann, unless there's further questions. I have a question. Maybe it's to help me understand the defendant's argument. If I understand the defendant's argument with regard to the August order that dismissed the original allegations or dismissed the original claim with leave to replead, I'm not sure whether they were arguing that it was final then or it became final when you took the non-suit and the judge at that time said, I'm not going to revisit the denial of the first claim or first set of allegations. At least it became final at that point. Whether it became final or not, does that matter under your theory that there was only one claim? Well, I guess I want to address a couple of things there. Number one is I don't think Judge Baczynski said, she said, I'm not going to address Judge Soriano's ruling. That's not on the table. And I believe she said that is because they did not ask for specific relief related to those allegations. Although they talked about it in the argument, their prayer for relief in that motion to dismiss was to dismiss the complaint in entirety. So she wasn't going to address those issues because they hadn't put them on the table. That's not relief they had asked in their request to admit. But even if they had requested that relief, I think it's clear that that order was not a final order because it was leave to amend. And this Court has made clear if there's leave to amend, it's not a final order. It couldn't have been appealed then because we were amending the complaint. That complaint, the first complaint then drops off. We bring the second complaint. We put those allegations and we add the additional allegations. Because the original allegations were that they didn't tell about claims other than the employer. So I don't necessarily agree that those claims dropped out. I think we were able to replead those. Now, we didn't have the direct product case at that time. It was then against the attorneys who failed to tell about the products case because of the change in the time of statute of limitations. But it was always just that claim. Thank you. Thank you. Rebuttal. First of all, to clarify with Justice Tice's question and brought again by Justice Kilbride, or rather Carmeier. I'm sorry. It was a final order. However, it was a final order that became appealable upon the voluntary dismissal. That is the distinction. It was always a final adjudication on the merits of that claim. So you could have asked for 304A language? Yes. There could have been a, yes. It could have been done that way. It was not. And so then it went to the voluntary dismissal. Yes. I'm sorry that I wasn't clear on that before. Hudson has said that claims dismissed without an opportunity to amend are final, even if the case is not dismissed in its entirety. There was no opportunity to amend this claim. It was dismissed without an opportunity to amend it. To amend it is final because even if the case wasn't dismissed in its entirety, it was the case went on to be, there was permission to plead some other claim. In Doe v. Gleicker, the court said, claims are final if they are defective and cannot be repled. This was a defective claim that could not be repled. It was the end of it. Does this case hinge, then, completely on whether we accept your argument that these are different claims or that these are different theories or allegations as a basis for recovery of the same claim, legal malpractice? I believe that that's a fair statement of how the case must be decided. It depends upon whether we can view these as absolutely distinct claims, branches of the controversy, separate parts of the subject matter that was in front of the court. When there was only the one branch, I've said this too many times probably, but it was removed and there was nothing left. So it was final and appealable, but it wasn't final and appealable. We all understand that the allegations with respect to the products claim, for example, were not going to go anywhere because of the statute. And the reason that the August order was dismissed without prejudice was because counsel had indicated we have allegations as to legal malpractice, that they blew the statute. But there was no way, we all know that, but there's no way without a 304A finding or without a dismissal with prejudice that they were going to be allowed to appeal it, right? Yes. The public court would have thrown it out and said, well, we don't have any jurisdiction. Yes. Is that of any import? Well, the cause of action, the larger, was proceeding forward, but this particular claim within it was gone. So there could have been 304A. What I've just said and what you agreed to lend credence to the idea that these were separate allegations as to the same claim. Maybe the allegations as to products and chemical exposure couldn't go anywhere because the statute had run, but allegations as to the fact that your law firm that you represent, having missed the fact that the statute had run, should have at that time had a claim for an action for legal malpractice against the first law firm. I mean, doesn't it tend to point you to the fact that there was one claim? I hear where you're going. To the extent that a claim is a right, this is Marsh, a right, a liability, a matter, the possibility of the law firm being liable for not having told them or pursued a product's liability action was eliminated. What was added was the right or liability or matter of not advising them about a legal malpractice action against other attorneys for not pursuing the product. Their position is pretty simple, that your law firm was on the hook for not filing third-party actions, be it third-party actions on the product's claim or be it a third-party action against the first law firm for blowing the product's claim. Isn't that basically what they say their overarching claim is and the rest are just allegations of the same? Yes, that is what they are saying. But we are saying when certain of those allegations that there is a difference between the facts supporting one of those and the facts supporting the other and when that was dismissed pursuant to Rule 273, that became an adjudication on the merits. The fact that even there was the same elements of proof, this is another thing we haven't quite talked about. I don't think it bars this, stands in the way and that is partly from Hudson. We had negligence and willful and wanton but they require the same elements of proof. Willful and wanton you go maybe one step further but you can't get there without proving negligence. It is an aggravated form of negligence as Prosser said. So the fact that we are still in the area of negligence about the same event in Hudson, arising from that same event here, arising out of the workers' compensation retention and even if it is arising out of failure to advise, it is still different claims, different factual predicates and there are finally, one of which is finally extinguished. Counsel suggested that they didn't discover the cause of action. This goes to Justice Burke. Well, discovery is the key to it. It seems clear and it was clear to three judges at least, Flanagan, Seriano, and Bizitsky, and even Lawrence I think, maybe four if you go back to Flanagan, out before this case that the discovery had occurred in either 1995 or 1999, sometime previous. He didn't really know he says in his affidavit about the manganese until 2003 but that affidavit also says I was very, very sick from doing my work and that's what the courts relied on. So I think the same facts were there. It makes no difference between Flanagan's ruling of what year it was and Seriano's ruling of what year it was. They could have brought this cause of action. I guess that's what I'm trying to say. They had knowledge. It was all decided. It's a matter of law in this case that they had knowledge in 1995 of what was going on and they could have pursued that which is the other huge part, of course, of raise you to counterclaim splitting is whether or not you brought everything you could have in the first round and we say they brought only one claim in the very first round, then they brought another claim, then they dismissed, and then they want to go to litigation on that second claim. That's another round of litigation. I think that's about the best I can put it right now. Thank you very much. We request that the appellate court be reversed and the trial court be affirmed. Thank you. Thank you, Mr. Shelton, Mr. Grand. Ms. Boyden, case number 113054, Jesse E. Hernandez et al. vs. Isidore Bernstein et al. Appellants is taken under advisement as agenda number 12. Mr. Marshall, the Illinois Supreme Court stands adjourned until Tuesday, September 18, 2012, 9 a.m.